FILED
2006 Jan-13 PM 02:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| **DEBBIE DEAVERS STURDIVANT,** *et al* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | CV-05-TMP-0305-W |
| | ) | |
| **DILLARD'S, Inc.; J. BACON & SONS;** | ) | |
| **THE CASTNER-KNOTT DRY GOODS** | ) | |
| **COMPANY; C. J. GAYFER & COMPANY,** | ) | |
| **INCORPORATED; GAYFER'S** | ) | CLASS ACTION |
| **MONTGOMERY FAIR CO.; J.B. WHITE** | ) | JURY DEMAND |
| **& COMPANY; THE MCALPIN** | ) | |
| **COMPANY; CONSTRUCTION** | ) | |
| **DEVELOPERS, INC.; MERCANTILE** | ) | |
| **STORES CO., INC.; and MERCANTILE** | ) | |
| **KANSAS CITY, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## THIRD AMENDED COMPLAINT

Plaintiffs hereby amend their Complaint to add the above-captioned individuals as defendants. Pursuant to their investigation, upon individual knowledge as to their own experiences and otherwise upon information and belief, for their Complaint plaintiffs allege as follows:

### I. JURISDICTIONAL ALLEGATIONS

1. Plaintiff Debbie Deavers Sturdivant is a resident of Springville, Alabama.

2. Plaintiff Vaughan Thomas is a resident of Montgomery, Alabama.

3. Plaintiff Patricia Mallory is a resident of Montgomery, Alabama.

4. Plaintiff Artis Smith is a resident of Ridgeland, Mississippi.

5. Plaintiff Hollis Casey is a resident of Montgomery, Alabama.

6. Plaintiff Lessie Harris is a resident of Tuscaloosa, Alabama.

7. Plaintiff Sandra Moody is a resident of Huntsville, Alabama.

8.  Plaintiff Vanessa Jones is a resident of Montgomery, Alabama.

9.  Defendant Dillard's, Inc. ("Dillard's") is a Delaware corporation with its principal place of business in Little Rock, Arkansas. Dillard's currently owns and operates hair salons around the country.

10. Defendant J. Bacon & Sons is a Kentucky corporation that was once owned by Mercantile and was acquired by Dillard's in 1998. J. Bacon & Sons operated hair salons and, upon information and belief, continues to operates hair salons under the name "Dillard's."

11. Defendant The Castner-Knott Dry Goods Company is a Tennessee corporation that was once owned by Mercantile and was acquired by Dillard's in 1998. The Castner-Knott Dry Goods Company operated hair salons and, upon information and belief, continues to operates hair salons under the name "Dillard's."

12. Defendant C. J. Gayfer & Company, Incorporated is a Delaware corporation that was once owned by Mercantile and was acquired by Dillard's in 1998. C. J. Gayfer & Company, Incorporated operated hair salons and, upon information and belief, continues to operates hair salons under the name "Dillard's."

13. Defendant Gayfer's Montgomery Fair Co. is a Delaware corporation that was once owned by Mercantile and was acquired by Dillard's in 1998. Gayfer's Montgomery Fair Co. operated hair salons and, upon information and belief, continues to operates hair salons under the name "Dillard's."

14. Defendant J. B. White & Company is a South Carolina corporation that was once owned by Mercantile and was acquired by Dillard's in 1998. J. B. White & Company operated hair salons and, upon information and belief, continues to operates hair salons under the name "Dillard's."

15. Defendant The McAlpin Company is a Kentucky corporation that was once owned by Mercantile and was acquired by Dillard's in 1998. The McAlpin Company operated hair salons and, upon information and belief, continues to operates hair salons under the name "Dillard's."

16. Defendant Mercantile Stores Co., Inc. is a Delaware corporation that was once owned by Mercantile and was acquired by Dillard's in 1998. Mercantile Stores Co., Inc. operated hair salons and, upon information and belief, continues to operates hair salons under the name "Dillard's."

17. Defendant Mercantile Kansas City, Inc. is a Delaware corporation that was once owned by Mercantile and was acquired by Dillard's in 1998. Mercantile Kansas City, Inc. operated hair salons and, upon information and belief, continues to operates hair salons under the name "Dillard's."

18. Defendants own and operate retail department stores throughout the United States.

19. A substantial number of the events or omissions which gave rise to plaintiffs' claims took place in Tuscaloosa County, Alabama.

20. A substantial number of the events or omissions which gave rise to plaintiffs' claims took place in Montgomery County, Alabama.

21. A substantial number of the events or omissions which gave rise to plaintiffs' claims took place in Madison County, Mississippi.

22. Federal jurisdiction exists with respect to the federal claim pursuant to 28 U.S.C. §§ 1331, 1343(a)(1)-(4), 2201, 2202 and 42 U.S.C § 1981.

23. The Court has supplemental jurisdiction of all remaining claims pursuant to 28 U.S.C. § 1367.

## II. NATURE OF THE CASE

24. This class action seeks redress for a nationwide fraudulent scheme and common course of conduct involving racial discrimination, deceptive sales practices, and unconscionable conduct by defendants relating to the marketing and sale of salon services. As used in this Complaint, these salon services specifically include, but are in no way limited to, the service referred to as "wash and set."

25. This civil action is brought by plaintiffs as a class action on behalf of all African American persons who have purchased salon services from one of the defendants' salons in the United States and who were thereby harmed by the nationwide unconscionable scheme and common course of conduct described herein (the "Class" or "Class Members").

26. Plaintiffs seek injunctive and equitable relief, compensatory damages, punitive damages and other remedies for defendants' unlawful, unconscionable and racially discriminatory conduct described herein in connection with the sale of their salon services and the training of their employees and agents in the sale of their salon services.

27. Defendants have maintained a fraudulent, unlawful and unconscionable scheme in order to increase their own revenues and profitability to the detriment of Class Members, by utilizing racially discriminatory dual pricing schedules for salon services.

28. On information and belief, defendants' salons throughout the United States, charge and have charged significantly more for the same salon service, using the same or equivalent products, for African-American customers than that charged for Caucasian customers. For example, the prices charged by defendants for salon service of a "wash and set" are based on whether the customer is Caucasian or "ethnic".

29. At all times in advertising and selling these salon services, defendants and their agents have known that they charge a higher price to African-Americans for the same service as that charged to Caucasians for the same service and did not disclose this fact to African-Americans prior to providing the service and products.

30. The discriminatory sales practices described herein have resulted in an increase in revenue and profits for defendants' salons.

### III. FACTUAL ALLEGATIONS

31. Debbie Sturdivant is an African-American woman and a resident of Springville, Alabama.

32. Debbie Sturdivant went to the Dillard's Salon located in Tuscaloosa, Alabama, which was formerly a part of Mercantile's Southeast Division and operated as Gayfer's, to have her hair washed, rolled and dried.

33. Debbie Sturdivant was charged and paid between $35.00 and $40.00 for a "wash and set." This was the price charged for "ethnic" hair.

34. The price charged for the same service for Caucasian customers was substantially less.

35. Vaughan Thomas is an African-American woman and a resident of Montgomery, Alabama.

36. Vaughan Thomas went to the Dillard's Salon located in Montgomery, Alabama, which was formerly a part of Mercantile's Southeast Division and operated as Gayfer's, to have her hair washed and set without rollers.

37. Vaughan Thomas was charged and paid between $35.00 and $40.00 for a "wash and set." This was the price charged for "ethnic" hair.

38. The price charged for the same service for Caucasian customers was substantially less.

39. Patricia Mallory is an African-American woman and a resident of Montgomery, Alabama.

40. Patricia Mallory went to the Dillard's Salon located in Montgomery, Alabama, which was formerly a part of Mercantile's Southeast Division and operated as Gayfer's, to have her hair washed, rolled and dried.

41. Patricia Mallory was charged and paid between $35.00 and $40.00 for a "wash and set." This was the price charged for "ethnic" hair.

42. The price charged for the same service for Caucasian customers was substantially less.

43. Artis Smith is an African-American woman and a resident of Ridgeland, Mississippi.

01259846.1                                            5

44. Artis Smith went to Dillard's Salons located in Jackson, Mississippi, which was formerly a part of Mercantile's Southeast Division and operated as Gayfer's, to have her hair washed, rolled and dried.

45. Artis Smith was charged and paid between $35.00 and $40.00 for a "wash and set." This was the price charged for "ethnic" hair.

46. The price charged for the same service for Caucasian customers was substantially less.

47. Hollis Casey is an African-American woman and a resident of Montgomery, Alabama.

48. Hollis Casey went to the Dillard's Salon located in Montgomery, Alabama, which was formerly a part of Mercantile's Southeast Division and operated as Gayfer's, to have her hair washed, rolled and dried.

49. Hollis Casey was charged and paid between $35.00 and $40.00 for a "wash and set." This was the price charged for "ethnic" hair.

50. The price charged for the same service for Caucasian customers was substantially less.

51. Lessie Harris is an African-American woman and a resident of Tuscaloosa, Alabama.

52. Lessie Harris went to the Dillard's Salon located in Tuscaloosa, Alabama, which was formerly a part of Mercantile's Southeast Division and operated as Gayfer's, to have her hair washed, rolled and dried.

53. Lessie Harris was charged and paid between $35.00 and $40.00 for a "wash and set." This was the price charged for "ethnic" hair.

54. The price charged for the same service for Caucasian customers was substantially less.

55. Sandra Moody is an African-American woman and a resident of Huntsville, Alabama.

56. Sandra Moody went to the Dillard's Salon located in Huntsville, Alabama, which was formerly a part of Mercantile's Central Division and operated as Castner Knott, to have her hair washed, rolled and dried.

57. Sandra Moody was charged and paid between $35.00 and $40.00 for a "wash and set." This was the price charged for "ethnic" hair.

58. The price charged for the same service for Caucasian customers was substantially less.

59. Vanessa Jones is an African-American woman and a resident of Montgomery, Alabama.

60. Vanessa Jones went to the Dillard's Salon located in Montgomery, Alabama, which was formerly a part of Mercantile's Southeast Division and operated as Gayfer's, to have her hair washed, rolled and dried.

61. Vanessa Jones was charged and paid between $35.00 and $40.00 for a "wash and set." This was the price charged for "ethnic" hair.

62. The price charged for the same service for Caucasian customers was substantially less.

63. Defendants have a nationwide policy to charge African-Americans higher prices for the same salon services than those charged to Caucasian customers, based on whether the customer is African-American.

64. Debbie Sturdivant, Vaughan Thomas, Patricia Mallory, Artis Smith, Hollis Casey, Lessie Harris, Sandra Moody and Vanessa Jones are members of the Class. On information and belief, defendants discriminated against them with respect to the prices charged for the wash and set service.

65. Defendants concealed their actions and their discriminatory and illegal practice from the plaintiffs and from the Class. As a result of said concealment, neither the plaintiffs nor the Class

could have or did discover this discriminatory and illegal behavior until shortly before the filing of this lawsuit.

66. Defendants' consistent course of discriminatory conduct constitutes a continuing violation of plaintiffs' federal statutory rights.

67. These allegations are one of several different allegations of discrimination brought against defendants suggesting a corporate culture of discrimination. In *Hampton and Cooper v. Dillard's*, African-American plaintiffs alleged that they were denied free cologne samples because of their race. Evidence presented at trial included testimony that Dillard's "tracked" African-Americans after they entered the store, used race "codes" that highlighted African-American shoppers as suspicious and generated store incident reports differentiating shoppers primarily by race. The Texas Chapter of the National Association for the Advancement of Colored People passed a resolution criticizing Dillard's for racial profiling. In 2001, Dillard's agreed to settle discrimination complaints by Kansas and Missouri employees. In a Texas lawsuit, Dillard's agreed to pay an undisclosed amount to the family of an African-American customer who died after being beaten and hogtied at a store while being arrested. Finally, in *Dotson, Barbee, and Jackson, individually and on behalf of all others similarly situated vs. Dillard's, Inc.*, 3:04-0252 (U.S. District Court, Middle District of Tennessee, 2004), current and former African-American hair stylists at Dillard's Salon and Day Spa have filed suit regarding Dillard's alleged continuing systemic racial discrimination in post-employment hiring practices through discriminatory terms and condition of employment and existence and perpetuation of a racially hostile work environment.

### IV. CLASS ACTION ALLEGATIONS

68. This case is brought as a class action under Rule 23(a), (b)(1), (b)(2), and (b)(3) of the *Federal Rules of Civil Procedure*. Plaintiffs seek certification of this civil action as a class action on behalf of all African-American persons who have purchased salon services from one of the defendants' salons in the United States and who were thereby harmed by the conduct alleged herein

("the Class"). This case is properly brought as a class action under Rule 23, for the reasons set forth in the following paragraphs.

69. The named plaintiffs are members of the Class of victims described herein. They were subject to the discriminatory scheme and common course of conduct by defendants.

70. Membership in the Class is so numerous that separate joinder of each member is impracticable. The number of Class Members is unknown but plaintiffs allege, based on information and belief, that there are thousands of persons in the Class.

71. There are numerous and substantial questions of law and fact common to the Class. Included within the common questions are:

    a) Whether defendants discriminated against Class Members by charging them a higher price for salon services than similarly situated Caucasian customers;

    b) Whether defendants discriminated by offering only higher priced salon services to Class Members;

    c) Whether defendants engaged in a common course of business which discriminated against Class Members on the basis of their race;

    d) Whether plaintiffs and Class Members are entitled to specific performance, injunctive relief or other equitable relief against defendants;

    e) Whether plaintiffs and Class Members have sustained damages and the proper measure of damages;

    f) Whether plaintiffs and Class Members are entitled to an award of punitive damages against defendants; and

72. The claims of the plaintiffs are typical of the claims of the Class.

73. Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced and competent in prosecution of class actions and complex litigation. Plaintiffs have no interest adverse to the interests of other Class Members.

74. This action qualifies for certification under *Fed. R. Civ. P.* 23(b)(1) because the prosecution of separate actions by individual plaintiffs would create a risk of inconsistent or varying adjudications with respect to individual members of the plaintiffs' Class which would as a practical matter be dispositive of the interests of other members of the plaintiffs' Class who were not parties to such individual adjudications or would substantially impair or impede such other individuals ability to protect their interests.

75. Final class injunctive or declaratory relief under *Fed. R. Civ. P.* 23(b)(2) is appropriate in this case because defendants have acted or refused to act on grounds generally applicable to the plaintiffs' Class, as stated above. Final injunctive relief or corresponding declaratory relief barring any further collection of discriminatory charges for salon services is appropriate with respect to the plaintiffs' Class as a whole.

76. This action qualifies for certification under *Fed. R. Civ. P.* 23(b)(3) because questions of law and fact common to the members of the plaintiffs' Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

77. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Class Members will continue to suffer damage and defendants' violations of the law will proceed without remedy while defendants continue to retain the proceeds of their ill-gotten gains.

78. Most individual Class Members have little ability to prosecute an individual action, due to the comparatively small, although significant, actual damages per incident suffered by the Class Members and the significant costs associated with litigation on this scale.

79. This action will result in an orderly and expeditious administration of Class claims. Economies of time, effort and expense will be fostered and uniformity of decisions will be insured.

80. This action presents no difficulty that would impede its management by the Court as a class action and a class action is superior to other available methods for the fair and efficient adjudication of their claims.

81. Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the Class, to require defendants to stop utilizing a dual pricing system which illegally discriminates against and damages all Class Members.

## COUNT 1

### (Racial Discrimination – 42 USC § 1981)

82. Plaintiffs repeat, reallege, and incorporate herein by reference paragraphs 24 through 81 above as if fully set forth herein.

83. Defendants intentionally discriminated against plaintiffs and Class Members by charging them higher prices for the same salon services as those charged to similarly situated Caucasian customers and by specifically instructing their employees and agents to charge different prices for the same salon services based solely on whether the customer was African-American or Caucasian.

84. By charging higher prices to African-Americans for the same salon services offered to Caucasian customers at a lower price, defendants violated the rights of plaintiffs and Class Members to make and enforce contracts for products and services on the same terms as Caucasian customers.

85. Defendants' actions violate 42 U.S.C. § 1981, as well as the rights of plaintiffs and the Class Members under the Fifth, Thirteenth, and Fourteenth Amendments of the Constitution of the United States.

86. Defendants have damaged plaintiffs and Class Members because plaintiffs and Class Members have suffered economic loss and mental anguish as a result of defendants' illegal racial discrimination.

## COUNT II

### (Failure to Monitor Actions of Agents and Employees)

87. Plaintiffs repeat, reallege and incorporate herein by reference, paragraphs 24 through 86 above as if fully set forth herein.

88. At the time the acts complained of were performed, defendants' agents and employees were not competent, qualified or capable of protecting the interests of defendants' customers in regard to the illegal and discriminatory dual pricing system for similar salon services and products.

89. Defendants knew or should have known that their agents and/or employees were effectuating a racially discriminatory dual pricing system in their individual stores.

90. Defendants had a duty to monitor and/or supervise the activities of their agents and/or employees.

91. Defendants intentionally, knowingly, recklessly and/or negligently failed to monitor the actions of their agents and employees and to train their agents and employees to refrain from racial discrimination in providing and pricing services.

92. Defendants knew or should have known about their agents' and employees' racially discriminatory dual pricing policy but nonetheless employed and continued to employ them.

93. Defendants authorized the wrongful acts of their agents and employees in accepting moneys charged for the services and products provided.

94. The racially discriminatory practices complained of benefited defendants in that the same were calculated to and did benefit defendants through profits made from the sale of their products and services.

95. As a proximate result of defendants' acts, plaintiffs and Class Members suffered economic loss.

## COUNT III

### (Fraudulent Inducement)

96. Plaintiffs repeat, reallege and incorporate herein by reference paragraphs 24 through 95 as if fully set forth herein.

97. Defendants made affirmative misrepresentations to plaintiffs and concealed material facts from plaintiffs regarding their racially discriminatory dual pricing structure for services and products.

98. At the time the misrepresentations were made, defendants knew that the representations were false, or made or caused to be made such misrepresentations without knowledge of the truth or falsity of such representations.

99. Defendants made the representations in order to induce plaintiffs to rely on the misrepresentations and omissions. Plaintiffs reasonably and justifiably relied on the misrepresentations and omissions.

100. As a direct and proximate result of the plaintiffs' reasonable and justifiable reliance on the affirmative misrepresentations and omitted material facts, plaintiffs have suffered mental anguish and monetary and damages.

## COUNT IV

### (Misrepresentation)

101. Plaintiffs repeat, reallege and incorporate herein by reference paragraphs 24 through 100 above as if fully set forth herein.

102. Defendants made affirmative misrepresentations to plaintiffs as well as concealed material facts from plaintiffs regarding the reasons for the dual pricing of products and services.

103. At the time the misrepresentations were made, defendants should have known that the representations were false, or made or caused to be made such representations without knowledge of the truth or falsity of such representations.

104. Defendants made the misrepresentations in order to induce plaintiffs to rely on the misrepresentations. Plaintiffs reasonably and justifiably relied on the misrepresentations and omissions.

105. As a direct and proximate result of plaintiffs' reasonable and justifiable reliance on the affirmative misrepresentations and omitted material facts, plaintiffs have suffered mental anguish and monetary and other damages.

## COUNT V

### (Unjust Enrichment)

106. Plaintiffs repeat, reallege and incorporate by reference paragraphs 24 through 105 as if fully set forth herein.

107. Defendants have been unjustly enriched as a result of their discriminatory and illegal activity.

108. Plaintiffs and Class Members have suffered economic loss and mental anguish as a result of defendants' unjust enrichment.

## COUNT VI

### (Fraudulent Concealment)

109. Plaintiffs repeat, reallege and incorporate herein by reference paragraphs 24 through 108 above as if fully set forth herein.

110. Defendants intentionally concealed and suppressed their discriminatory and illegal behavior from the plaintiffs and the Class.

111. Plaintiffs and the Class members relied on said suppression and concealment to their detriment.

112. As a direct and proximate consequence of said suppression and concealment, plaintiffs and the Class have been injured.

## COUNT VII

### (Declaratory, Injunctive, and Equitable Relief)

113. Plaintiffs repeat, reallege and incorporate herein by reference paragraphs 24 through 112 as if fully set forth herein.

114. Plaintiffs seeks a declaration that any dual price structure based solely on race for salon services is unconscionable and illegal.

115. Plaintiffs, for themselves and on behalf of the Class, seek injunctive relief enjoining defendants from charging different prices for African-Americans and minorities for the same salon services offered to similarly situated Caucasian customers.

116. Plaintiffs and Class Members have no adequate remedy at law.

117. Plaintiffs, for themselves and on behalf of the Class, seek disgorgement of profits made by defendants as a result of this discriminatory and illegal activity.

118. Plaintiffs, for themselves and on behalf of the Class, seek restitution of the ill-gotten gains received by defendants from their discriminatory and illegal actions.

119. Plaintiffs, for themselves and on behalf of the Class, seek the establishment of a constructive trust and an order for defendants to disgorge their profits and ill-gotten gains into the constructive trust for the benefit of the Class.

120. By reason of the foregoing, plaintiffs and Class Members are entitled to the declaratory and injunctive relief set forth above.

WHEREFORE, plaintiffs demand judgment against defendants for themselves and Class Members as follows:

    a) An order determining that the action is a proper class action pursuant to Rule 23 of the *Federal Rules of Civil Procedure*;

    b) Awarding the plaintiffs and the Class compensatory and punitive damages in an amount to be proven at trial for the wrongful acts complained of;

c) Awarding plaintiffs and the Class their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

d) Granting extraordinary equitable and/or injunctive relief as permitted by law or equity;

e) Granting the declaratory, injunctive and equitable relief contained in paragraphs 113 through 120;

f) Granting of such other and further relief as the Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY**

_____
Patrick C. Cooper
W. Percy Badham III
Robert W. Tapscott, Jr.
Attorneys for Plaintiffs


OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
Suite 2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
Phone: (205) 254-1000
Fax:    (205) 254-1999

# CERTIFICATE OF SERVICE

I hereby certify that on this the 13th day of January, 2006, a copy of the foregoing has been served upon the following via United States mail, postage prepaid and properly addressed as follows:

Brian R. Bostick
Timothy A. Palmer
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203-2118

OF COUNSEL

**PLEASE SERVE THE FOLLOWING DEFENDANTS VIA CERTIFIED MAIL:**

**J. Bacon & Sons, d/b/a "Bacon's"**
c/o Dillard's, Inc.
1600 Cantrell Road
Little Rock, Arkansas 72201

**The McAlpin Company, d/b/a "McAlpin"**
c/o Dillard's, Inc.
1600 Cantrell Road
Little Rock, Arkansas 72201

**C.J. Gayer & Company, Inc., d/b/a "Dillard's"**
c/o Dillard's Inc.
1600 Cantrell Road
Little Rock, Arkansas 72201

**Gayer's Montgomery Fair Co., d/b/a "Dillard's"**
c/o Dillard's Inc.
1600 Cantrell Road
Little Rock, Arkansas, 72201

**The Caster-Knott Dry Goods Co., d/b/a "Dillard's"**
c/o Dillard's Inc.
1600 Cantrell Road
Little Rock, Arkansas 72201

**J. B. White & Company, d/b/a "Dillard's"**
c/o Dillard's, Inc.
1600 Cantrell Road
Little Rock, Arkansas 72201

**Construction Developers, Inc., d/b/a "Construction D"**
c/o Dillard's, Inc.
1600 Cantrell Road
Little Rock, Arkansas 72201

**Mercantile Stores Co., Inc., d/b/a "Dillard's"**
9450 Seward Road
Fairfield, Ohio 45014

**Mercantile Kansas City, Inc., d/b/a "Dillard's"**
9450 Seward Road
Fairfield, Ohio 45014